UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROBERT D. SANGO,

        Plaintiff,

Case No. 1:15-cv-365

Hon. Gordon J. Quist

v.

UNKNOWN BURNS, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a *pro se* action brought by a state prisoner in the custody of the Michigan Department of Corrections (MDOC). This matter is now before the Court on plaintiff's motion for summary judgment (docket no. 9), plaintiff's motion for a TRO (temporary restraining order) (docket no. 12), and defendant Burns' motion for summary judgment solely on a failure to exhaust administrative remedies (docket no. 18).

    **I.**    **Plaintiff's complaint**

The Court previously summarized plaintiff's complaint as follows:

Plaintiff Robert D. Sango is incarcerated with the Michigan Department of Corrections (MDOC) at Ionia Correctional Facility (ICF). Defendants are correctional officers at ICF: Officer (unknown) Burns and Officer (unknown) Watkins.

According to the complaint, on March 30, 2015, Plaintiff heard a loud voice announce to the unit, "We are offering $400.00 in whatever you want . . . for whoever sends one of their homies to [Plaintiff's mother's address] and gang rapes the Bitch there." (Compl. at 2, docket #1, Page ID#2.) An hour later, Defendant Burns came to Plaintiff's cell and stated that, if Plaintiff did not drop his civil litigation within two days, Burns would take Plaintiff to the day room, taser him until he passed out, and then hang him. (*Id.*) Plaintiff stated that he would notify the court immediately, and he asked Burns, "What about my mother?" (*Id.*) Burns responded, "[We'll] see, I might want a piece of that, we're friends now aren't we." (*Id.*)

> As relief, Plaintiff seeks (1) a declaratory judgment that "acts and omissions, which have become a part of the culture of the MDOC, due to failed oversight, to allow officers violate prisoners (especially the mentally ill) with impunity, then destroy them when they speak up"; (2) an injunction to "remove [him] from the jurisdiction of the MDOC" because he has been stabbed by a prisoner at the direction of prison staff, and prison officers have assaulted him, attempted to kill him by poisoning his food, and threatened to murder him; and (3) damages. (*Id.* at 2-3)

Opinion (docket no. 5, PageID.49). The Court dismissed defendant Watkins and has served plaintiff's retaliation claim against defendant Burns. *Id.* at PageID.51-52; Order regarding partial service (docket no. 6).

## II. Plaintiff's motion for TRO

At the time he filed this action, plaintiff was incarcerated at ICF. Then, plaintiff was transferred to Baraga Correctional Facility (AMF), where he is currently incarcerated. In this motion, plaintiff seeks injunctive relief to be removed from the custody of the MDOC and be placed in federal custody. Plaintiff filed this same motion in two cognate cases pending in this district, *Sango v. Burns*, 1:15-cv-356 (as docket no. 15) and *Sango v. Watkins*, 1:15-cv-358 (as docket no. 9).[1] This Court denied this motion for injunctive relief in *Watkins*. *See Watkins*, 1:15-cv-358 (Order) (docket no. 17). Accordingly, plaintiff's identical motion for a TRO filed in this action should be denied for the same reasons.

## III. The parties' motions for summary judgment

### A. Legal standard

---

[1] "Cognate cases are pending civil actions involving the same or similar questions of fact or law such that their assignment to a single judge is likely to effect a substantial saving of judicial effort and to avoid wasteful and duplicative proceedings for the court and the parties." W.D. Mich. LCivR 3.3.2(c)(i). *See* Administrative Order 15-035 (docket no. 7) (identifying case nos. 1:15-cv-356, 1:15-cv-358 and 1:15-cv-365 as cognate cases assigned to the Honorable Gordon J. Quist).

Defendant seeks summary judgment on the ground that plaintiff failed to exhaust his administrative remedies with respect to this retaliation claim. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Rule 56 further provides that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the parties' burden of proof in a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

      **B.    Defendant's Motion for failure to exhaust**

      **1.    Exhaustion requirement**

3

The PLRA provides that a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must first exhaust available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516 (2002); *Booth v. Churner*, 532 U.S. 731 (2001). A prisoner must exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741. One reason for creating prisoner grievance procedures under the PLRA was to create an administrative record for the court.

> Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court. This has the potential to reduce the number of inmate suits, and also to improve the quality of suits that are filed by producing a useful administrative record.

*Jones v. Bock*, 549 U.S. 199, 204 (2007). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Id.* at 218; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218.

    **2. MDOC Grievance process**

The MDOC requires prisoners to follow a three-step process to exhaust grievances. *See* Policy Directive 03.02.130 (effective July 9, 2007). A prisoner must first attempt to resolve a problem with the staff member within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If the issue is not resolved, then the grievant may file a Step I grievance on the prescribed form within five business days after the grievant

attempted to resolve the issue with appropriate staff. *Id.* at ¶¶ P and R.  The Policy Directive provides the following directions for completing grievance forms:

> The issues should be stated briefly but concisely.  Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included.

*Id.* at ¶ R (emphasis in original).  The prisoner must send the Step I grievance to the appropriate grievance coordinator.  *Id.* at ¶ V.  If the prisoner is dissatisfied with the Step I response, or does not receive a timely response, he must request the appropriate form and send it to the Step II Grievance Coordinator.  *Id.* at ¶ BB.  Finally, if a prisoner is dissatisfied with the Step II response, or does not receive a timely response, he must send a completed Step III grievance, using the appropriate form, to the Grievance and Appeals Section.  *Id.* at ¶ FF.

### 3. Questions of fact exist with respect to exhaustion

In his brief, defendant points out that plaintiff filed nine Step III grievances while incarcerated at ICF.  Defendant's Brief (docket no. 19, PageID.129).  Defendant identifies five grievances (ICF-15-02-0430-17i, ICF-14-12-2354-17i, ICF-14-12-2437-28e, ICF-14-11-2347-17i, and ICF-14-07-0631-01z) which "were either pending or completed/resolved" after plaintiff filed the complaint in this action.  *Id.*; MDOC Prisoner Step III Grievance Report ("Grievance Report") (docket no. 19-3, PageID.143-153).  None of these grievances could exhaust plaintiff's claims in this action. *See Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir.1999) (a prisoner may not exhaust administrative remedies during the pendency of federal civil rights action).  Defendant also asserts that "all of Sango remaining grievances precede Sango's Complaint allegations by nearly one year and do not pertain to the allegations in Sango's Complaint." *Id.*  However, defendant's brief did not identify or address the

5

relevant grievances, but simply attached a stack of grievances as an exhibit. *See* Grievances (docket no. 19-3, PageID.154-174).

Defendant's shortcomings in presenting his motion are harmless, however, because plaintiff does not rely on the exhaustion of any of the grievances listed in the Grievance Report. Rather, plaintiff contends that he was placed on modified access during the relevant time period, that while on modified access he had to request a grievance form from the grievance coordinator, and that he had no administrative remedy because his requests for grievance forms were denied. *See* Plaintiff's Response (docket n. 22).

When a prisoner is on modified access, his proposed grievances are screened by a grievance coordinator to determine whether to allow the prisoner to file a grievance:

> While on modified access, the prisoner or parolee shall be able to obtain grievance forms only through the Step I Grievance Coordinator. A grievance form shall be provided if the Step I Grievance Coordinator determines that the issue the prisoner or parolee wishes to grieve is grievable and otherwise meets the criteria outlined in this policy. The Grievance Coordinator shall maintain a record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial. If a prisoner or parolee on modified access attempts to file a grievance using a form not provided by the Grievance Coordinator, the Grievance Coordinator may reject the grievance in accordance with Paragraph G.

MDOC Policy Directive, 03.02.130 ¶ KK.

The Sixth Circuit has rejected the claim that MDOC prisoners on modified access are unable to exhaust administrative remedies as required by the PLRA. *See Walker v. Michigan Department of Corrections*, 128 Fed. Appx. 441, 446-47 (6th Cir. 2005). However, in reaching this determination, the Court acknowledged that MDOC prisoners on modified can exhaust claims under the PLRA without following the same three step grievance procedure of inmates who are not on modified access:

> With regard to access to the courts, [the MDOC prisoner's] argument is that, as a result of the modified access process, he is unable to exhaust administrative remedies, and thus he cannot ever file a claim in federal court based on a non-frivolous grievance dismissed by a grievance officer. But this cannot be correct; if a grievance officer dismissed a non-frivolous complaint by [the prisoner], that would be the end of possible administrative remedies with regard to that grievance, and a court would thus have jurisdiction to hear a related federal claim, since all possible administrative remedies would have been attempted. *See, e.g.*, *Hartsfield v. Mayer*, No. 95-1411, 1996 WL 43541, at *3 (6th Cir. Feb. 1, 1996) (holding that the MDOC's modified grievance status does not in any way impinge upon a plaintiff's First Amendment right to access to courts); *see also* 42 U.S.C. § 1997e(a) (requiring only exhaustion of *available* administrative remedies).

*Id.*[2]

Plaintiff's status is explained in a February 23, 2015 Memorandum from ICF Grievance Coordinator Clarice Lewis, which advised plaintiff that because of his abuse of the grievance process he is on modified access from February 23, 2015 through May 24, 2015. Lewis Memo (docket no. 23-2, PageID.184). The memorandum provided instructions on how plaintiff was to obtain a grievance form:

> If you feel that you have a grievable issue, you must submit a request for a grievance form (CSJ- 247A) to the Grievance Coordinator. Your request, in writing, must contain a clear explanation of your complaint that includes all pertinent information, necessary documents and positive identification of the staff member involved. The Grievance Coordinator will determine if the request involves a legitimate, grievable issue. If the issue is legitimate, a grievance form will be forwarded to you. This grievance form can only be used for that approved complaint. No other issues may be included.

*Id.*

Plaintiff submitted a declaration stating that he requested forms on March 30, 2015 and April 1, 2015. Plaintiff's Declaration (docket no. 23). Plaintiff also provided copies of a handwritten

---

[2] Under *Walker*, prisoners who are on modified access (due to abusing the grievance process) can "properly exhaust" a grievance by doing nothing more than sending a kite to request a grievance. This process bypasses any meaningful review of the grievance by the MDOC and allows prisoners on modified access to file multiple, unreviewed claims directly in federal court. Certainly, the drafters of the PLRA did not intend this result.

request for grievance forms addressed to Ms. Lewis dated March 30, 2015 and a "Notice of delinquent requests for grievance forms" dated April 1, 2015. *See* Plaintiff's requests (docket nos. 23-3 and 23-4). The March 30, 2015 request raised the issue of defendant Burns allegedly offering "$400 in confiscated appliances and food" if the prisoners sent homies to gang rape plaintiff's mother. *See* Request (docket no. 23-3). Plaintiff's April 1, 2015 notice referred to this request (and two other requests). *See* Notice (docket no. 23-4).

In his reply, defendant provided an affidavit from Ms. Lewis which stated in pertinent part that pursuant to MDOC Policy Directive 03.02.130 ¶ KK, "a prisoner on modified access can still file a grievance by obtaining a form from the Grievance Coordinator." Lewis Aff. (docket no. 25-2, PageID.192). Ms. Lewis further stated that she notified plaintiff on February 23, 2015 that he was on modified access until May 24, 2015 because he was found guilty of an interference with the administration of rules misconduct (i.e., plaintiff sent a grievance complaint of staff misconduct to the Office of Legal Affairs, which was investigated and found to be unfounded). *Id.* at PageID.193. Ms. Lewis further stated that "[c]onsistent with this policy, [plaintiff] was informed that during the period of modified access status, all requests for a grievance form need to be submitted to the Grievance Coordinator" and that during his period of modified access status, "[plaintiff] did not request any Step I grievance forms." *Id.* However, Ms. Lewis' affidavit does not address, or include a copy of, the "record of requests received for grievance forms and whether the request was approved or denied and, if denied, the reason for the denial" as required in MDOC Policy Directive 03.02.130 ¶ KK

Factual issues exist with respect to exhaustion. Plaintiff's claim of exhaustion does not rely on matters set forth in the Step III Grievance Report. Rather, plaintiff claims that his grievances should be deemed exhausted because Ms. Lewis denied his requests for grievance forms. As discussed,

8

there is a question of fact as to whether plaintiff requested a grievance on March 30, 2015 while on modified access. Viewing the evidence in the light most favorable to plaintiff as the non-moving party, genuine issues of material fact exist as to whether plaintiff exhausted his claim against defendant Burns. Accordingly, defendant's motion for summary judgment should be denied.

### C. Plaintiff's motion for summary judgment

Plaintiff filed identical motions for summary judgment in this action, *Sango v. Burns*, 1:15-cv-356 (as docket no. 10) and *Sango v. Watkins*, 1:15-cv-358 (as docket no. 17). Defendant did not file a response to this motion. "The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996). The trial court is required to "intelligently and carefully review the legitimacy of such unresponded-to motion" and cannot "blithely accept the conclusions argued in the motion." *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 407 (6th Cir. 1992). However, when a motion for summary judgment is unopposed, "[n]othing in either the Rules or case law supports an argument that the trial court must conduct its own probing investigation of the record" to demonstrate the existence of genuine issues of material fact. *Id.* at 405.

Plaintiff's motion for summary judgment arises from an incident which occurred on March 29, 2015, when defendant Burns issued plaintiff a misconduct for threatening behavior when plaintiff told Burns, "Bitch, when I get the chance I'm gonna cut your throat and I'm killing all you other bitches." Misconduct Hearing Report (docket no. 10-1, PageID.66). Plaintiff was convicted of the misconduct on April 14, 2015. *Id.* In his motion for summary judmgnet, plaintiff contends that his due process rights were violated when he was found guilty of committing this misconduct. *See* Plaintiff's Declaration and Exhibits (docket nos. 10, 10-1, 10-2 and 10-3). The motion for summary

judgment does not address plaintiff's claim in this action, because plaintiff does not allege that defendant Burns' retaliation arose from this misconduct hearing. Rather, plaintiff alleged that Burns retaliated against plaintiff for filing lawsuits, i.e., on March 30, 2015, Burns allegedly offered other prisoners a bounty if they gang-raped plaintiff's mother and threatened to taser and hang plaintiff unless plaintiff dismissed his "civil suits." Compl. (docket no. 1). Accordingly, plaintiff's motion for summary judgment should be denied.

### IV. Recommendation

For these reasons, I respectfully recommend that plaintiff's motion for summary judgment (docket no. 9), plaintiff's motion for a TRO (docket no. 12), and defendant's motion for summary judgment (docket no. 18) be **DENIED**.

Dated: February 5, 2016                          /s/ Ray Kent
                                                 Ray Kent
                                                 United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).